IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO RAMIREZ RINCON,<br><br>　　　　　　　　　　Petitioner,<br><br>　　　v.<br><br>MATT MULLIN, Warden,<br><br>　　　　　　　　　　Respondent. | Case No. 1:12-cv-00515 MJS (HC)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY** |

Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent is represented by Amanda D. Cary of the office of the California Attorney General. Both parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). (ECF Nos. 8, 14.)

**I.　PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Merced, following his June 26, 2009, conviction by a jury of attempted robbery and kidnapping to commit robbery. (Clerk's Tr. at 362-65.) On March 9, 2010, the trial court sentenced Petitioner to serve a determinate term of fourteen (14) years in jail. (Id.)

Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

1

District, on October 5, 2010. (Lodged Doc. 9.) On July 15, 2011, the court affirmed the judgment. (Answer, Ex. A.) Petitioner filed a petition for review with the California Supreme Court on July 28, 2011. (Lodged Doc. 13.) The Supreme Court summarily denied the petition on October 12, 2011. (Lodged Doc. 14.)

Petitioner filed the instant federal habeas petition on March 21, 2012. (Pet., ECF No. 1.) In his petition, Petitioner presents a single claim, alleging that his counsel was ineffective for failing to investigate the professional disciplinary history of one of the psychological experts who testified at trial.

Respondent filed an answer to the petition on October 3, 2012. (Answer, ECF No. 20.) The matter stands ready for adjudication.

## II.   **STATEMENT OF THE FACTS**[1]

**FACTUAL AND PROCEDURAL BACKGROUND**

> The basic facts are not in dispute. On October 8, 2007, around 5:30 a.m., appellant hid inside Rosa Molina's van as Molina was dropping her children off at appellant's house to be babysat by appellant's wife while Molina went to work. When Molina returned to her van and started backing out of the driveway, appellant came up from behind and ordered her to continue driving.**[FN1]** Appellant pressed an object against Molina's hip, which she believed to be a gun. Appellant testified it was a toy gun and admitted that he pretended to cock the gun when he asked Molina to drive. Although Molina had met appellant in the past, that morning she did not recognize appellant, who was wearing a hooded sweatshirt with the hood up.
>
>> **FN1**. Molina testified that appellant threatened to kill her if she did not drive as directed. Appellant, however, denied making such a threat, and testified that he told Molina not to worry and that he just needed a ride.
>
> As Molina was driving, appellant asked her if she had $20. When she said she did not have any money, he asked her if she had any coffee. Molina told appellant that she did not have any coffee but there were some sodas in the back of the van. Appellant replied that this was fine.
>
> After having Molina drive him around for about an hour, appellant directed her to stop at a field and told her she was going to help him dig up some guns.**[FN2]** As they walked into the field, Molina saw that appellant was holding a knife. Eventually, appellant crouched down to look

---

[1] The Fifth District Court of Appeal's summary of the facts in its July 15, 2011 opinion is presumed correct. 28 U.S.C. § 2254(e)(1).

for people through a pair of binoculars. When he crouched down, Molina started to run back to the van. Appellant chased Molina, but she was able to get inside the van and lock the doors. As she began to drive forward, appellant slashed one of the van's tires. The van started to swerve, but Molina was able to control it and travel to a nearby dairy farm where she sought help.

> **FN2**. Appellant testified that he did not know why he asked Molina to take him to the field. He did not remember telling her that he had guns hidden in the field, explaining, "No, I do not remember, because I don't have any [guns]."

On March 12, 2008, appellant was charged by information with attempted robbery (Pen. Code,**[FN3]** §§ 664/211; count 1) and kidnapping for robbery (§ 209, subd. (b); count 2). It was further alleged that appellant had three prior convictions of serious or violent felonies (§ 1170.12, subd. (c)(2)(A).)

> **FN3**. Further statutory references are to the Penal Code unless otherwise specified.

On March 19, 2008, following his arraignment, appellant entered a plea of not guilty. On June 25, 2008, appellant personally entered an additional plea of not guilty by reason of insanity.

The trial court thereafter appointed two psychologists — Dr. Richard A. Blak, Ph.D. and Dr. J. Stanley Bunce, Ph.D. — to examine appellant and to prepare a report (§§ 25, subd. (b), 1026). In a report dated July 2, 2008, Dr. Blak concluded that appellant was legally insane at the time of the offenses. Dr. Bunce reached the opposite conclusion in a report dated July 17, 2008.

Testimony in the guilt phase of appellant's jury trial commenced on June 19, 2009. The defense did not dispute that appellant was involved in the October 8, 2007 incident, and appellant's account of what happened largely paralleled Molina's account. The defense theory was that appellant did not actually form the mental state required for the crimes due to mental disorders he suffered, which were exacerbated by his consumption of methamphetamine prior to his encounter with Molina. The defense theory was supported by the testimony of appellant and a psychologist, Dr. Phillip Hamm, Ph.D.

Appellant testified, inter alia, that he was the victim of a stabbing in November 2006, which required him to undergo surgery. When he was released from the hospital, he was given Vicodin, but it failed to relieve all his pain. Due to chronic pain, appellant was unable to work or assist his family financially. Despondent, appellant attempted to commit suicide by hanging himself in his garage, but his wife found him and cut him down. In an effort to relieve his pain, appellant began to use methamphetamine in 2007, and became addicted to the drug. In the hours before the incident in this case, appellant smoked approximately three grams of methamphetamine. Appellant denied that he got inside Molina's van because he wanted money for drugs.

Dr. Hamm testified that he diagnosed appellant as suffering from multiple mental conditions, including chronic pain syndrome, major

3

> depression, and posttraumatic stress disorder. Dr. Hamm opined that appellant was in a psychotic state at the time of the offenses. Dr. Hamm explained that a person in a psychotic state is unable to formulate a rational plan of action.
>
> The prosecution called the court-appointed psychologists, Dr. Blak and Dr. Bunce, as rebuttal witnesses. Dr. Blak, who was in agreement with Dr. Hamm that appellant was psychotic at the time of the offenses, nonetheless testified that, when he interviewed appellant on June 30, 2008, appellant told him that his confrontation with Molina was about "seeking money for drugs." Dr. Bunce testified that when he interviewed appellant on July 8, 2008, appellant did not report experiencing any specific delusions or hallucinations during the subject incident.
>
> On June 26, 2009, a jury found appellant guilty of committing the offenses.
>
> On June 29, 2009, the trial on the sanity issue commenced. Dr. Blak and Dr. Hamm testified for the defense and both opined that appellant was legally insane at the time of the offenses. Dr. Bunce testified for the prosecution and opined that appellant was sane when he committed the crimes.
>
> On June 30, 2009, the jury found appellant was sane at the time of his commission of the offenses. In a bifurcated proceeding, the trial court found the prior conviction allegations to be true.
>
> On September 18, 2009, appellant filed an application for a new trial based on newly discovered evidence (§ 1181, subd. (8)). Attached to the application was evidence that, at the time of Dr. Bunce's testimony in the instant matter, an accusation charging gross negligence had been filed against him and an administrative law judge had issued a 25-page proposed decision to revoke his license, which was dated June 19, 2009. The proposed decision revoking Dr. Bunce's license was adopted by the Board of Psychology on August 24, 2009, and became effective on September 23, 2009.
>
> On March 9, 2010, the trial court heard and denied appellant's motion for a new trial finding no reasonable likelihood the new evidence concerning Dr. Bunce's license revocation would lead to a different result on retrial. The court then proceeded to sentencing. After striking two of appellant's prior convictions, the court sentenced him to 14 years to life for his conviction of kidnapping for robbery, and six years for his conviction of attempted robbery, which term the court stayed pursuant to section 654.

People v. Rincon, 2011 Cal. App. Unpub. LEXIS 5297, 2-7 (Cal. App. 5th Dist. July 15, 2011).

### III.   GOVERNING LAW

### A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the

Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Merced County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

### B.   Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 326 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); <u>Williams v. Taylor</u>, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

#### 1.   <u>Contrary to or an Unreasonable Application of Federal Law</u>

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005) citing <u>Williams</u>, 529 U.S. at 405-06. "AEDPA does not require state and federal courts to wait for some nearly identical

1  factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that
2  even a general standard may be applied in an unreasonable manner" Panetti v.
3  Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The
4  "clearly established Federal law" requirement "does not demand more than a 'principle'
5  or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state
6  decision to be an unreasonable application of clearly established federal law under §
7  2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle
8  (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-
9  71 (2003).  A state court decision will involve an "unreasonable application of" federal
10  law only if it is "objectively unreasonable." Id. at 75-76, quoting Williams, 529 U.S. at
11  409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the
12  Court further stresses that "an *unreasonable* application of federal law is different from
13  an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529
14  U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks
15  merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the
16  correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541
17  U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts
18  have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S.
19  Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established
20  Federal law for a state court to decline to apply a specific legal rule that has not been
21  squarely established by this Court." Knowles v. Mirzayance, 129 S. Ct. 1411, 1419
22  (2009), quoted by Richter, 131 S. Ct. at 786.

23              2.      Review of State Decisions

24       "Where there has been one reasoned state judgment rejecting a federal claim,
25  later unexplained orders upholding that judgment or rejecting the claim rest on the same
26  grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the
27  "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198
28  (9th Cir. 2006).   Determining whether a state court's decision resulted from an

unreasonable legal or factual conclusion, "does not require that there be an opinion from the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Richter instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

///

3.  Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).  Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002).  Musalin v. Lamarque, 555 F.3d at 834.

**IV.   REVIEW OF PETITION**

    **A.   Ineffective Assistance of Counsel**

Petitioner contends that his rights under the Sixth and Fourteenth Amendments of the United States Constitution were deprived by the alleged ineffective assistance of counsel based on trial counsel's failure to request pretrial discovery relating to Dr. Bunce's professional background and history (Pet.)

1.  Law Applicable to Ineffective Assistance of Counsel Claims

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998).  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.

Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; see also, Harrington v. Richter, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different." Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were "so serious as to deprive defendant of a fair trial, a trial whose result is reliable." Id. at 687. The Court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1348; United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659, and n. 25 (1984).

As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the standard for ineffective assistance of counsel in federal habeas is extremely difficult:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review

> of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S. Ct. at 785-86.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

Accordingly, even if Petitioner presents a strong case of ineffective assistance of counsel, this Court may only grant relief if no fairminded jurist could agree on the correctness of the state court decision.

### 2. State Court Decision

Petitioner presented his claim of ineffective assistance of counsel in his direct appeal to the California Court of Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the Court of Appeal and summarily denied in subsequent petition for review by the California Supreme Court. (See Answer, Ex. A, Lodged Doc. 14.) Since the California Supreme Court denied the petition in a summary manner, this Court

"looks through" the decisions and presumes the Supreme Court adopted the reasoning of the Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1)).

In denying Petitioner's claim, the Court of Appeal explained that:

> Appellant contends the trial court erred by denying his motion for a new trial based on newly discovered evidence that Dr. Bunce, the prosecution's sole expert on appellant's mental state, was "at the time of his testimony ... under investigation for having had sexual relations with a patient in 2005 and 2006, and a proposed decision to revoke his license had already been issued on the grounds of gross negligence." Appellant further contends, in his supplemental opening brief, that his trial counsel rendered ineffective assistance of counsel by failing to move for pretrial discovery concerning Dr. Bunce's professional history. We reject both contentions and conclude the trial court did not abuse its discretion by denying appellant's motion for a new trial because the newly discovered evidence was merely impeaching evidence and was not such to render a different result probable.
>
> "'To grant a new trial on the basis of newly discovered evidence, the evidence must make a different result probable on retrial.' [Citation.] '[T]he trial court has broad discretion in ruling on a new trial motion,' and its 'ruling will be disturbed only for clear abuse of that discretion.' [Citation.] In addition, '[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence.' [Citation.]" (People v. Verdugo (2010) 50 Cal.4th 263, 308.)
>
> "In [People v. Delgado (1993) 5 Cal.4th 312, 328 (Delgado)], the California Supreme Court identified five factors to consider when ruling on a motion for new trial based on newly discovered evidence: "'1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the case; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits.'" [¶] Moreover, '"a motion for a new trial should be granted when the newly discovered evidence contradicts the strongest evidence introduced against the defendant."' [Citation.]" (People v. Hall (2010) 187 Cal.App.4th 282, 298.) "Critically, '[a] new trial on the ground of newly discovered evidence is not granted where the only value of the newly discovered testimony is as impeaching evidence' or to contradict a witness of the opposing party. [Citations.]" (Id. at p. 299.)

11

>Although Dr. Bunce's testimony was arguably the strongest evidence against appellant in the sanity phase of his trial, the newly discovered evidence that Dr. Bunce was facing disciplinary charges on an unrelated matter did not directly refute his testimony concerning appellant's mental state.**[FN4]** The admitted purpose of the new evidence was to impeach the credibility of the prosecution's expert witness. Therefore, the trial court properly denied appellant's motion for a new trial.
>
>>**FN4**. The importance of Dr. Bunce's testimony during the guilt phase is less significant because there was ample evidence, besides his testimony, that appellant had the requisite mental state for the offenses (i.e., the intent to commit robbery). (CALCRIM Nos. 460, 1203). Appellant's prior statements to Dr. Blak that the purpose of his encounter with the victim was to seek money for drugs contradicted appellant's trial testimony that his conduct towards the victim was not motivated by a desire to get money from her for drugs. Appellant also admitted on cross-examination that, at the time he was in Molina's van, he wanted more methamphetamine and that he was out of both methamphetamine and money. Appellant's detailed memory of the events and the consistency between his account and Molina's also raises some doubt as to his claim that his ability to form intent was affected by his mental disorders and methamphetamine intoxication.
>
>On appeal, appellant acknowledges the principle that newly discovered evidence does not warrant a new trial if it "goes solely to impeach the credibility of witnesses." However, he argues the rule should yield in this case. Thus, he asserts in his opening brief:
>
>>"The prohibition against the granting of a new trial based upon impeaching evidence cannot be invoked in a case such as the one at bench, where the evidence constitutes impeachment of such fundamental importance to the credibility and judgment of a key witness on the focal issue of the case. *Had a jury learned that Dr. Bunce's license was revoked for having sexual relations with a severely disturbed patient, there is good cause to find it would have lost trust in his judgment and found his opinion less persuasive.*" (Italics added.)
>
>Similarly, appellant asserts in his reply brief:
>
>>"*The fact that he would abuse his position of power and trust to engage in sexual relations with a mentally disturbed patient demonstrates not only a lack of professionalism, but a serious disregard for the welfare of his patients....* [¶] ...[T]he evaluation of a patient's mental state involves an undeniably subjective aspect that requires the exercise of judgment. Thus, evidence which shows that a mental health professional exercised such seriously flawed judgment in the performance of his duties as to engage in an affair with his mentally disturbed patient necessarily impacts the credibility and reliability of his opinion." (Italics added.)

12

Appellant repeats variations of this argument throughout his briefing on appeal.

The most glaring problem with appellant's argument is that the record establishes that Dr. Bunce's license was not revoked for having sexual relations with the patient in question. Although this allegation was made in the accusation filed against Dr. Bunce, the administrative law judge's proposed decision to revoke his license, which the Board of Psychology later adopted, states that Dr. Bunce "successfully defended against a finding that he and [the patient] engaged in sexual relations with each other." The administrative law judge specifically found that the "complainant failed to prove by clear and convincing proof to a reasonable certainty that [Dr. Bunce] and [the patient] had sexual relations with each other."

Instead, the decision to revoke Dr. Bunce's license was based on the alternative ground alleged in the accusation that the psychologist engaged in an improper "multiple relationships" with the patient.**[FN5]** The factual findings of the administrative law judge reflect that Dr. Bunce encouraged his patient to become involved in various mental health organizations, including starting a bipolar support group with him, frequently dined out with the patient before meetings, and attended out-of-town conferences with the patient that required overnight stays in hotels and led to incidental social activities, like visiting a Jaguar car dealership together, unrelated to the therapeutic relationship. Based on these and related facts, the administrative law judge concluded that "[Dr. Bunce] entered into numerous unethical multiple relationships and that his conduct in this regard was an extreme departure from the standard of care and amounted to gross negligence."

> **FN5**. The decision defines a multiple relationship, in part, as follows: "(a) A multiple relationship occurs when a psychologist is in a professional role with a person and ... at the same time is in another role with the same person .... [¶] A psychologist refrains from entering into a multiple relationship if the multiple relationship could reasonably be expected to impair the psychologist's objectivity, competence, or effectiveness in performing his or her functions as a psychologist, or otherwise risk exploitation or harm to the person with whom the professional relationship exists."

Without intending to minimize the seriousness of Dr. Bunce's conduct, which undoubtedly compromised his objectivity with respect to the individual patient involved, we nonetheless cannot ascribe to it the devastating impeaching power suggested by appellant in his erroneous assertions that Dr. Bunce had his license revoked for having a sexual relationship with the patient. Rather, we agree with the trial court's conclusion that the new evidence was not such as to render a different result probable. Even had the jury heard evidence that Dr. Bunce was under investigation for entering into an improper multiple relationship with his patient and was exposed to some of the administrative law judge's factual findings regarding Dr. Bunce's activities with the patient outside of therapy, which occurred between August 2005 and January 2006, we do not believe the information would have been so damaging to his credibility

13

as to cause the jury to reject his July 2008 evaluation of appellant or his June 2009 testimony regarding appellant's mental state at the time of the offenses. As respondent correctly points out, "Dr. Bunce did not have his license revoked because he was not properly trained or educated, or because he was shown to render inaccurate or improper diagnoses."

Moreover, none of the cases appellant cites because they "found new trials warranted based upon impeaching evidence" remotely resembles the instant case. (See e.g., People v. Randle (1982) 130 Cal.App.3d 286 [after defendant convicted of forcible oral copulation, newspaper article published about crime and naming victim resulted in 17 individuals in nearby city submitting declarations detailing instances of victim's dishonesty and commission of public sex acts]; People v. Henry (1956) 142 Cal.App.2d 114 [rape case where prosecutor neglected to ask victim whether defendant was the person she had sexual intercourse with and new evidence was victim affidavit stating defendant was not the man], People v. Huskins (1996) 245 Cal.App.2d 859 [child molestation case where new evidence showed prosecution's only adult witness suffered history of paranoid schizophrenia and had made unproven allegations of child molestation against her own husband], People v. Williams (1962) 57 Cal.2d 263 [burglary and robbery case where victim (defendant's ex-lover with whom he had 2 children) did not testify and credible new evidence showed the prosecution's chief witness (victim's new lover) testified falsely against defendant].)

Because a different outcome in this case is not probable, we reject appellant's related claim that he received ineffective assistance of counsel as a result of his trial counsel's failure to move for pretrial discovery regarding Dr. Bunce's professional background and history.

"In considering a claim of ineffective assistance of counsel, it is not necessary to determine '"whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."' [Citations.] It is not sufficient to show the alleged errors may have had some conceivable effect on the trial's outcome; the defendant must demonstrate a 'reasonable probability' that absent the errors the result would have been different. [Citations.]" (People v. Mesa (2006) 144 Cal.App.4th 1000, 1008.)

Appellant has failed to show the requisite prejudice.

People v. Rincon, 2011 Cal. App. Unpub. LEXIS 5297 at 7-17.

### 3. Analysis

Here, providing the state court decision with appropriate deference for Petitioner's contentions, there is at least a possibility that fair-minded jurists could agree with the state court decision that Petitioner was not prejudiced by counsel's conduct.

As noted by the California Court of Appeal, Dr. Bunce engaged in serious professional misconduct which resulted in the loss of his license. Without a doubt, such information would surely be significant evidence that could have impacted his credibility.

Despite the fact that the evidence would undermine Dr. Bunce's credibility, the Court of Appeal found that the failure to investigate and present the evidence did not prejudice Petitioner and that the outcome of the trial would not have not been different. The court found that Dr. Bunce's conduct did not have the "devastating impeachment power" suggested by Petitioner. The revocation was not based on Dr. Bunce being improperly educated or trained or that he was shown to render inaccurate or improper diagnoses. The court found that while Dr. Bunce's objectivity towards the individual patient was compromised, it was unclear if a jury would find his opinion with regard to other patients, in this case Petitioner, less persuasive.

Here, in light of the doubly deferential standard on federal habeas review, it is not possible to find that the state court decision was unreasonable. While it is possible that the impeachment evidence could have benefited Petitioner, Petitioner has not met his burden of showing that there was a "reasonable probability that… the result ... would have been different." Strickland, 466 U.S. at 694. Fairminded jurists could therefore disagree with the correctness of the state court decision that counsel's failure to investigate Dr. Bunce's conduct was not "so serious as to deprive defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 487. Petitioner's claim of ineffective assistance of counsel is without merit.

**V.     CONCLUSION**

Petitioner is not entitled to relief with regard to the claims presented in the instant petition. The Court therefore orders that the petition be DENIED.

**VI.    CERTIFICATE OF APPEALABILITY**

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). The controlling statute

in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)   (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that no reasonable jurist would find the Court's determination that Petitioner is not entitled to federal habeas corpus relief wrong or debatable, nor would a reasonable jurist find Petitioner deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the

denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

### **ORDER**

Accordingly, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is DENIED;

2) The Clerk of Court is DIRECTED to enter judgment and close the case; and

3) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated: September 3, 2013         /s/ *Michael J. Seng*
                                  UNITED STATES MAGISTRATE JUDGE